UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JB WHITELOW, JR., | ) |
|                          *Plaintiff*, | ) |
| v. | ) No. 2:22-cv-00189-JMS-MJD |
| EATON, *C.O.*; SGT. DRADA, *C.O.*; SGT. COBB, *C.O.*; SMALL, *C.O.*; ALLEN, *C.O.*; RUSSELL, *C.O.*; MARTIN, *C.O.*; ASHLYNN GONTHIER; THOMAS WELLINGTON; L. WADHWAN; CHAMBERS, *Sgt.*; PIRTLE, *Sgt.*; and TROUP, *Officer*; | ) |
|                          *Defendants*. | ) |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S DELIBERATE INDIFFERENCE CLAIM

Plaintiff JB Whitelow, Jr. is an inmate currently incarcerated at Wabash Valley Correctional Facility ("Wabash Valley"). He filed this lawsuit alleging violations of his First Amendment, Eighth Amendment, and Fourteenth Amendment rights.[1] Defendants filed a Motion for Summary Judgment, [Filing No. 46], which the Court ruled on in a February 26, 2025 Order, [Filing No. 67]. Specifically, the Court granted Defendants' Motion for Summary Judgment as to Mr. Whitelow's Eighth Amendment excessive force and conditions of confinement claims, First Amendment retaliation claim, and Fourteenth Amendment race-based equal protection claim. [Filing No. 67.] The Court took under advisement whether Mr. Whitelow's Eighth Amendment deliberate indifference to medical care claim should proceed because neither side offered adequate argument on the claim, but the Court's review of the record and case law appeared to establish that

---

[1] These are the claims which the Court found should proceed after the Court screened Mr. Whitelow's Second Amended Complaint pursuant to 28 U.S.C. § 1915A(a), (c). [Filing No. 11; Filing No. 14.]

1

Defendants were entitled to summary judgment. [Filing No. 67 at 51-54.] So, pursuant to Federal Rule of Civil Procedure 56(f)(2), which allows a court to grant summary judgment "on grounds not raised by a party" as long as the parties are provided notice and a reasonable time to respond to the Court's intention to do so, the Court explained its view of the claim in light of the record and case law, notified Mr. Whitelow of its intention to grant summary judgment in Defendants' favor on the claim pursuant to the Court's view of the case law and record, and ordered Mr. Whitelow to file a response. [Filing No. 67 at 51-54.] The Court also noted that it would order further argument from Defendants if it deemed it necessary after Mr. Whitelow's response. [Filing No. 67 at 51.]

Mr. Whitelow has filed his Response, [Filing No. 68], and the Court does not deem it necessary for further argument from the Defendants. The Court therefore proceeds to analyze the remaining claim of Eighth Amendment deliberate indifference to medical care.

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record in the light most favorable to the non-moving party, including giving that party the benefit of conflicting evidence, and draws all reasonable inferences in that party's favor. *Ziccarelli v. Dart*, 35 F.4th 1079, 1083 (7th Cir. 2022); *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021); *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind.*

*Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017) (cleaned up).  "Taking the facts in the light most favorable to the non-moving party does not mean that the facts must come only from the nonmoving party.  Sometimes the facts taken in the light most favorable to the non-moving party come from the party moving for summary judgment or from other sources." *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  "Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough." *Daugherty v. Page,* 906 F.3d 606, 611 (7th Cir. 2018) (cleaned up).  Rather, at the summary judgment stage, "[t]he parties are required to put their evidentiary cards on the table." *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits.  Fed. R. Civ. P. 56(c)(1)(A).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment.  Fed. R. Civ. P. 56(e).

When the evidence in the case involves a video of the relevant events, "[a] twist on the usual standard of review is at play." *Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016).  "When the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape." *Id.* (citing *Scott v. Harris,* 550 U.S. 372, 379-80 (2007)).  In other words, the Court "can rely on clear

3

and conclusive videos if 'they firmly settle[ ] a factual issue.'" *Manery v. Lee*, 124 F.4th 1073, 1077 n.5 (7th Cir. 2025) (quoting *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018)).

## II.
### FACTUAL BACKGROUND

The facts stated below are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005). The full factual background is set forth in the Court's February 26, 2025 Order. [Filing No. 67.] Here, the Court provides only the facts relevant to Mr. Whitelow's remaining deliberate indifference claim. [Filing No. 67.]

**A. May 4 - Mr. Whitelow Arrives at Wabash Valley**

In the evening on May 4, 2020, Mr. Whitelow was transferred to the Secured Confinement Unit ("SCU") at Wabash Valley from another facility. [Filing No. 47-1 at 9; Filing No. 47-1 at 17; Filing No. 47-2 at 1.] When Mr. Whitelow arrived, Sgt. Eaton was the supervising sergeant over the SCU unit where Mr. Whitelow was placed. [Filing No. 47-1 at 69; Filing No. 47-2 at 1.] Mr. Whitelow was escorted to his cell by Sgt. Eaton and two additional officers. [Filing No. 47-12 at 00:28-00:42; *see* Filing No. 50; Filing No. 51.] The officers guided Mr. Whitelow into his cell before exiting and signaling another officer to close the door. [Filing No. 47-12 at 00:28-01:25.]

Once the door was securely closed, Mr. Whitelow approached the door, and Sgt. Eaton and the other officers utilized the cuff port to remove Mr. Whitelow's hand restraints. [Filing No. 47-12 at 01:25-03:39.] After Mr. Whitelow's hand restraints were removed, Mr. Whitelow took a step back inside his cell and the video shows an obstructed view of an open and clear cuff port. [Filing No. 47-12 at 03:35-03:36.] Sgt. Eaton then took a step forward to close the cuff port, and simultaneously, Mr. Whitelow took a step forward within his cell. [Filing No. 47-12 at 03:35-

4

03:37.] Sgt. Eaton lifted the cuff port closed with one hand and took a half step backward, pausing for about a half-second before beginning to walk away with one of the other officers. [Filing No. 47-12 at 03:37-03:42.] Mr. Whitelow then gently pushed open the cuff port about two seconds later. [Filing No. 47-12 at 03:41-03:45.] Sgt. Eaton turned around, gently closed the cuff port and held it shut, while another officer retrieved a key and locked the cuff port closed. [Filing No. 47-12 at 03:45-03:52.] Once the cuff port was securely closed, Mr. Whitelow walked away from his cell door, and Sgt. Eaton and the other officers exited the range. [Filing No. 47-12 at 03:45-04:03.] But before exiting the range, Mr. Whitelow requested medical attention for his hand,[2] and Sgt. Eaton said: "That will teach you not to put your hands on staff!" [Filing No. 63 at 6 (Affidavit of Mr. Whitelow).] "No correctional officer contacted medical for any assistance." [Filing No. 63 at 6.]

### B. May 5 - Mr. Whitelow Is Moved to Another Cell

The next day, on May 5, 2020, Major Russel, who was not present when Mr. Whitelow arrived, noticed that Mr. Whitelow had mistakenly been placed in the wrong range. [Filing No. 47-3 at 1.] Major Russel contacted Wabash Valley's Count Office, Mr. Whitelow's cell assignment was corrected, and he was moved to a cell with a camera. [Filing No. 47-3 at 1.] Mr. Whitelow also informed Major Russell that his hand had been injured. [Filing No. 47-3 at 2.]

---

[2] Mr. Whitelow alleged that Sgt. Eaton used excessive force when closing the cuff port and that he trapped and crushed Mr. Whitelow's fingers inside it, injuring his hand. [*See* Filing No. 67 at 5 (citations omitted).] However, in its February 26, 2025 Order, the Court found that the video evidence clearly contradicted Mr. Whitelow's version of events and established that Sgt. Eaton used only *de minimis* force when closing Mr. Whitelow's cuff port and that Mr. Whitelow's hand was not inside the cuff port when Sgt. Eaton closed it. [Filing No. 67 at 5 n.4 (citations omitted).] As described later, it is undisputed that Mr. Whitelow sustained a hand injury at some point in his first few days at Wabash Valley, but the Court found that the video evidence contradicted the possibility that it was sustained from Sgt. Eaton's closure of the cuff port. [Filing No. 67 at 18-21.]

**C. May 5 - Mr. Whitelow Covers His Camera and Cell Window**

In the evening of May 5, 2020, while in his cell with a camera, Mr. Whitelow continuously covered the camera and his cell windows. [Filing No. 47-13 (a 58:49-minute-long video depicting Mr. Whitelow continuously covering his camera and his door); Filing No. 47-16 (a 1:01:08-hour-long video depicting the same).] Just after 6:30 p.m. on May 5, 2020, Officer Martin approached Mr. Whitelow's cell and informed him that he was not permitted to cover his cell's window or camera as he had been doing but that he was allowed to cover the camera to use the toilet. [Filing No. 47-14 at 0:59-5:05; Filing No. 63 at 7.] Correctional staff's ability "to monitor offenders placed in camera cells is an important function for the safety and security of the prison." [Filing No. 47-4 at 3.] Mr. Whitelow "showed [his] hand injuries to Officer Martin and she said [he] would be seen by medical staff soon" and "even said that she would email medical staff and internal affairs to speed things up, but she never emailed medical staff." [Filing No. 63 at 7.] Officer Martin emailed internal affairs, however, and informed them that Mr. Whitelow was "requesting to speak with one of [them]" and that he was "adamant about it." [Filing No. 47-4 at 3; Filing No. 47-4 at 11.]

Mr. Whitelow eventually complied and removed the cover from his cell's camera and window. [Filing No. 47-4 at 2.] Defendant Martin exited the range and wrote Mr. Whitelow "a misbehavior report . . . for covering the camera to use the toilet." [Filing No. 47-14 at 05:01-05:06; Filing No. 63 at 7.]

Shortly thereafter, Mr. Whitelow resumed covering his cell's window and camera. [Filing No. 47-4 at 2; Filing No. 47-14 at 10:03-41:55.] Officer Martin requested the help of Sgt. Eaton due to Mr. Whitelow repeatedly covering his window and camera. [Filing No. 47-4 at 2.] Officer Martin eventually went to Mr. Whitelow's cell to communicate with him to stop covering his cell's

6

camera and window. [Filing No. 47-2 at 2; Filing No. 47-4 at 2; Filing No. 47-15 at 04:55-07:32.] Mr. Whitelow kept his window covering up while communicating with Sgt. Eaton, who ordered Mr. Whitelow to uncover his camera and keep it uncovered. [Filing No. 47-2 at 2; Filing No. 47-15 at 04:55-07:32.] Mr. Whitelow asked for medical attention and Sgt. Eaton "claimed that [Mr. Whitelow's] hand injuries were accidental and not [Sgt. Eaton's] fault." [Filing No. 63 at 7.] Mr. Whitelow told Sgt. Eaton that he disagreed and that he "would only talk to Sgt. Eaton after [he] finished writing the grievance and/or received medical attention." [Filing No. 63 at 7.] Sgt. Eaton ordered Mr. Whitelow "to submit to mechanical restraints so that his camera could be uncovered." [Filing No. 47-2 at 2.] Mr. Whitelow removed the window and camera coverings and went near the back of his cell where he began writing a grievance against Sgt. Eaton. [Filing No. 63 at 7; Filing No. 47-15 at 07:50-09:12; *see* Filing No. 47-16 at 46:25-46:40.] At the same time, another officer assisting Sgt. Eaton (Sgt. Barker, a non-party in this case), sprayed Oleoresin Capsicum ("OC Spray") into Mr. Whitelow's cell via the cuff port. [Filing No. 47-2 at 2; Filing No. 47-15 at 17:44-17:48; Filing No. 47-16 at 46:42-46:46.] Sgt. Eaton then handcuffed Mr. Whitelow "in an aggressive way." [Filing No. 63 at 7.] Mr. Whitelow was taken to a decontamination shower. [Filing No. 47-15 at 23:13-23:24; Filing No. 47-17 at 06:25-17:31.] Mr. Whitelow was thereafter escorted to the nurse station, where a nurse "told officers to get [him] out of there because [he] was frustrated and loud with Sgt. Eaton." [Filing No. 63 at 7.] No medical assessment was done. [Filing No. 63 at 7.]

After the above events took place, Mr. Whitelow was placed on Strip Cell status[3] and his personal property was confiscated. [Filing No. 47-4 at 2; Filing No. 63 at 7.] When Mr. Whitelow

---

[3] The parties do not define the term Strip Cell status, but as best the Court can tell, it means that officers removed almost everything from Mr. Whitelow's cell except a sleeping pad. [*See* Filing No. 47-18 at 00:00-00:38.]

returned to his cell, he continued to cover his camera with his hand and a piece of tape. [Filing No. 47-18 at 06:00-26:45.] Mr. Whitelow was again removed from his cell to allow officers to search the cell. [Filing No. 47-18 at 26:58-42:57.] When Mr. Whitelow and his cell were searched, officers found two weapons—a GTL tablet battery pack tied into a sheet and a sharpened metal object. [Filing No. 47-4 at 3; Filing No. 47-18 at 31:18-31:25.] Officers removed the sleeping pad, and Mr. Whitelow was returned to his cell. [Filing No. 47-18 at 43:00-43:14.]

Shortly thereafter, Mr. Whitelow smeared his feces over the window and camera. [Filing No. 47-18 at 56:20-1:15:23.] At no point during these events did Mr. Whitelow receive medical attention for his hand. [Filing No. 63 at 7.]

### D. May 5 Into May 6 – Mr. Whitelow Receives Conduct Reports

From late May 5, 2020 into the early morning hours of May 6, 2020, Mr. Whitelow received four Conduct Reports for his behavior of covering his cell's window and camera with paper and a bed sheet, refusing to submit to restraints, possession of weapons, and using his bodily waste to cover his cell's camera and window. [Filing No. 47-2; Filing No. 47-4; Filing No. 63 at 8.]

### E. May 5 to May 10 – Mr. Whitelow Repeatedly Shows Defendants His Hand Injury

From May 5, 2020 until May 10, 2020, Mr. Whitelow "kept showing [his] hand injuries to Sgt. Sgt. Cobb, Sgt. Sgt. Drada, Lt. Allen, Major Russell, Sgt. Eaton, Casework Manager Gonthier, and [Officer] Martin during their routine rounds at the SCU but all these staff members ignored [his] serious medical need." [Filing No. 63 at 8.]

### F. May 10 Through 12 – Mr. Whitelow Receives X-Rays and a Medical Brace

On May 10, 2020, Mr. Whitelow submitted a Health Care Request Form, in which he noted that "[his] hand was smashed in the door by C.O.'s and appears to be broken. . . Male nurse on

8

[T]hursday[4] said [I] was put in for x-ray but [N]urse Perez said I was not put in[.] Can [I] please be seen before damage is permanent." [Filing No. 57 at 3.] Health care staff responded to Mr. Whitelow's request, noting "x-rays ordered." [Filing No. 57 at 3.] Mr. Whitelow's left hand was subsequently x-rayed, and the x-rays revealed that the fifth metacarpal, the bone that connects the wrist to the pinkie finger, on Mr. Whitelow's left hand was fractured. [Filing No. 47-1 at 104-05; Filing No. 63 at 8.] He was "given an ulnar gutter splint ('medical brace')," pain relief medication, and "a frontward handcuffing permit by medical staff." [Filing No. 63 at 8.]

### G. This Lawsuit

As noted above, the Court granted Defendants' Motion for Summary Judgment on Mr. Whitelow's Eighth Amendment excessive force and conditions of confinement claims, First Amendment retaliation claim, and Fourteenth Amendment race-based equal protection claim. [Filing No. 67.] The Court took under advisement Mr. Whitelow's Eighth Amendment deliberate indifference to medical care claim against Sgt. Eaton, Major Russell, Casework Manager Gonthier, Officer Martin, Sgt. Sgt. Cobb, Sgt. Drada, Lt. Small, and Lt. Allen. [Filing No. 67 at 48-54.] The Court explained that the viability of Mr. Whitelow's claim depended on whether he produced sufficient evidence for a reasonable juror to find in his favor on the second of the two required elements of a deliberate indifference claim because it was clear that he produced sufficient evidence on the first element—an objective serious medical condition. [Filing No. 67 at 49.] As to the second required element—that the Defendants were deliberately, subjectively indifferent to his serious medical condition—the Court explained that:

> Neither party proffers much of an argument under th[e second] element [of a deliberate indifference claim]. [See Filing No. 48 at 27-28; Filing No. 62 at 14-20; Filing No. 64 at 14-15.] The Court's review of the record and case law, however, establishes that Defendants may well be entitled to summary judgment under this

---

[4] May 10, 2020 was a Sunday. The Thursday before May 10, 2020 was May 7, 2020.

9

> element, as explained below. Federal Rule of Civil Procedure 56(f)(2) allows a court to grant summary judgment "on grounds not raised by a party" as long as the parties are provided notice and a reasonable time to respond to the Court's intention to do so. This is the parties' notice.
>
> The Court sets forth below how it sees the record and applicable caselaw on this element, and **ORDERS** Mr. Whitelow to **FILE A RESPONSE** no longer than **5 pages** by **March 12, 2025**, responding only to the Court's discussion below on the ground that it appears that Defendants are entitled to summary judgment based on the subjective deliberate indifference element of his claim. The failure to respond will result in the Court granting Defendants' Motion for Summary on this claim for the reasons explored below. *See Olser Institute, Inc. v. Forde*, 333 F.3d 832, 837 (7th Cir. 2003) (holding that plaintiff's "squandered opportunity [to defend its claims was] not grounds for reversal"). The Court **WILL ORDER** further argument from Defendants **IF IT DEEMS NECESSARY AFTER** Mr. Whitelow's response.

[Filing No. 67 at 51 (emphasis in original).]

The Court then explained that it appeared on the record and through case law that Mr. Whitelow did not create a triable issue of fact regarding deliberate indifference. [Filing No. 67 at 51-53.] Specifically, the Court first explained that the undisputed video evidence did not support an inference that Sgt. Eaton or any other Defendant knew that Mr. Whitelow had sustained a fracture upon his arrival at Wabash Valley on May 4, 2020 or that they were aware of the extent of his injury and pain, whenever it occurred. [Filing No. 67 at 51-52.] Secondly, the Court noted that there was undisputed evidence in the record that undermined his claim. The Court highlighted that Mr. Whitelow's claim that Defendants ignored his medical requests from May 5, 2020 until May 10, 2020 was directly contradicted by his acknowledgment that he was seen by a nurse on May 7, 2020. [Filing No. 67 at 51-52 (quoting Filing No. 57 at 2).] Further, the Court explained that it appeared that the Defendants' delay from May 5, 2020 until May 7, 2020 was reasonable and did not amount to deliberate indifference because Mr. Whitelow's behavior on those days prohibited safe treatment. [Filing No. 67 at 51-53.]

From this evidence, the Court reasoned that "it appeared that the delay was not a result of deliberate indifference but rather a necessary measure to preserve the penological interests of maintaining institutional security and discipline." [Filing No. 67 at 52 (citations omitted).]

### III.
#### DISCUSSION

Mr. Whitelow timely filed his Response to the Court's February 26, 2025 Order. [Filing No. 68.] The Court does not deem it necessary for further argument from Defendants and therefore proceeds to analyze Mr. Whitelow's remaining Eighth Amendment deliberate indifference claim.

In his response to the Court's intention to grant summary judgment to Defendants based on the reasoning described above, Mr. Whitelow highlights the same facts he relies upon in his response in opposition to Defendants' Motion for Summary Judgment and reasserts that he constantly requested medical attention from May 5, 2020 until May 10, 2020 and was completely ignored. [Filing No. 68.] Significantly, Mr. Whitelow does not address the evidence that he saw a nurse on May 7, 2020 and does not address or otherwise respond to the Court's analysis that his behavior from May 5, 2020 until May 7, 2020 prohibited safe medical treatment. [Filing No. 68; see Filing No. 67 at 53 (citation omitted).]

The Eighth Amendment "requires prisons to provide adequate medical care to prisoners." *Jackson v. Esser*, 105 F.4th 948, 961 (7th Cir. 2024) (citing *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021)). "Because depriving a prisoner of medical care serves no valid penological purpose, deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Brown v. Osmundson*, 38 F.4th 545, 550 (7th Cir. 2022) (quotations omitted, citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Jackson*, 105 F.4th at 961; *Riley v. Waterman*, 126 F.4th 1287, 1295 (7th Cir. 2025).

"To prevail on a deliberate indifference claim, the plaintiff must prove (1) that he had an objectively serious medical condition (2) to which prison officials were 'deliberately, that is subjectively, indifferent.'" *Id.* (quoting *Johnson*, 5 F.4th at 824). The standard is not mere negligence—it requires proof that the defendant knew of and disregarded an excessive risk of inmate health or safety or that they were aware of facts suggesting a substantial risk and consciously ignored it. *Jackson*, 105 F.4th at 961 (quotations and citations omitted). *Id.*; *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 763 (7th Cir. 2021) ("[D]eliberate indifference requires more than negligence or even gross negligence.") (quotations omitted). "Even 'objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it should be known—is insufficient to make out a claim.'" *Jackson*, 105 F.4th at 961 (quoting *White v. Woods*, 48 F.4th 853, 862 (7th Cir. 2022)).

The first element is not at issue here, [Filing No. 67 at 50], so the Court focuses on the second—subjective deliberate indifference. To meet this element, a plaintiff must show that the defendant "*actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (emphasis in original) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Officials can avoid liability by proving they were unaware even of an obvious risk to inmate health or safety." *Petties*, 836 F.3d at 728 (citing *Farmer*, 511 U.S. at 844). An "inexplicable delay in treatment which serves no penological interest" can support an inference of deliberate indifference. *Petties*, 836 F.3d at 730 (noting that "delays are common in the prison setting with limited resources, and whether the length of a delay is tolerable depends on the seriousness of the condition and the ease of providing treatment"). "Maintaining institutional security and preserving internal order and discipline are essential" penological interests. *Bell v.*

12

*Wolfish,* 441 U.S. 520, 546-47 (1979) (citing *Pell v. Procunier,* 417 U.S. 817, 823 (1974), other citations omitted).

Even construing the record liberally, a complete examination of the record undermines Mr. Whitelow's claim. First, the evidence confirms that on May 5, 2020, after requesting medical attention, Mr. Whitelow was escorted to the nurse's station. [Filing No. 63 at 17 (Mr. Whitelow's affidavit attesting to this fact).] Upon arrival, the evidence shows that he was "frustrated and loud with Sgt. Eaton" and the nurse "told the officers to get [him] out of there" and did not medically assess him. [Filing No. 63 at 17 (Mr. Whitelow's affidavit).] While delaying or denying medical care can amount to deliberate indifference, *Estelle,* 429 U.S. at 104-05; *Petties,* 836 F.3d at 730, in this instance, the refusal to assess Mr. Whitelow was due to his disruptive behavior—not a deliberate denial of care. The response served a legitimate penological purpose, maintaining order and discipline among inmates, *Bell,* 441 U.S. at 546-47, and did not violate the Eighth Amendment.

Second, the evidence shows that Mr. Whitelow was seen by a nurse on May 7, 2020, which directly contradicts his claim that Defendants ignored his requests from May 5, 2020 until May 10, 2020. [Filing No. 57 at 2.] Although two days is not a short amount of time for someone in pain, the facts of this case reveal that no reasonable juror could infer that the delay from May 5 to May 7, 2020 was "an inexplicable delay . . . which serve[d] no penological interest" such that it amounted to deliberate indifference. *Petties,* 836 F.3d at 730 (citations omitted); *cf. Grieveson v. Anderson,* 538 F.3d 763, 767-68, 779-80 (7th Cir. 2008) (where there were no issues with prisoner's behavior or other reason to delay care, prison officers' delay of securing prisoner medical treatment for one-and-a-half days created a triable issue of fact as to the officers' states of mind). Crucially here, the undisputed evidence shows that from May 5 until at least May 6, 2020, Mr. Whitelow repeatedly covered his camera and cell window, including with feces; refused to comply with

13

orders; and was found with two weapons—a GTL tablet battery pack tied into a sheet and a sharpened metal object on his person. [Filing No. 47-4 at 3; Filing No. 47-18 at 31:18-31:25.] While Mr. Whitelow's hand fracture was a serious injury, and an x-ray is a rather simple diagnostic treatment tool, the ability to provide such treatment to Mr. Whitelow while he was indisputably hostile and noncompliant and found with weapons was nonexistent. In other words, no reasonable juror could find that the delay was a result of deliberate indifference instead of a necessary measure to preserve the penological interests of maintaining institutional security and discipline. *Petties,* 836 F.3d at 730; *Bell,* 441 U.S. at 546-47.

The Court **GRANTS** Defendants' Motion for Summary Judgment, [Filing No. 46], on Mr. Whitelow's claim of Eighth Amendment deliberate indifference in connection with receiving medical care.

### IV.
#### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment, [46], on Mr. Whitelow's claim of Eighth Amendment deliberate indifference in connection with receiving medical care, which the Court had previously taken under advisement. Because the Court previously granted summary judgment on all other claims, there are no further claims in this case.

Final judgment shall issue accordingly.

Date: 3/25/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via United States Mail to:**

JB Whitelow, Jr.
217729
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838